**United States District Court**
For the Northern District of California

1

2

3

4

5

6                       IN THE UNITED STATES DISTRICT COURT

7

8                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10    HALSEY MINOR, an individual,                        No. C 08-05445 WHA

11              Plaintiff,

12       v.

13    CHRISTIE'S INC., a New York corporation,            *Consolidated with:*
      and DOES 1 through 20, inclusive,

14
              Defendants.
15    _____/

16    AND RELATED COUNTERCLAIMS.
      _____/
17
      CHRISTIE, MANSON & WOODS, LTD.,                     No. C 09-00471 WHA
18    a United Kingdom corporation,

19              Plaintiff,

20       v.

21    HALSEY MINOR, an individual,
      and ROES 1 through 20, inclusive,
22
              Defendants.
23    _____/

24

25                        **FINAL CHARGE TO THE JURY**

26                            **AS OF MAY 19, 2010**

27

28

1

**NOTICE TO COUNSEL**

2     The final charge to the jury and special verdict form as of May 19 are appended hereto.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1.

It is your duty to decide this case and to find the facts from all the evidence presented in the case. To those facts you must apply the law as I now give it to you. Copies of these instructions will be available in the jury room for you to consult as necessary. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the Court may have said or done as suggesting what verdict you should return — that is a matter entirely up to you.

2.

The evidence from which you are to decide what the facts are consists of:

1. The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

2. The exhibits which have been received into evidence; and

3. The sworn testimony of witnesses in depositions read into evidence or played on the screen.

3.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments, statements and objections by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. A suggestion in a question by counsel or the Court is not evidence unless it is adopted by the answer. A question by itself is not evidence. Consider it only to the extent it is adopted by the answer.

United States District Court

For the Northern District of California

3.      Testimony or exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered.  Demonstrative charts and diagrams were shown to you but are not evidence (unless admitted into evidence).

4.      Anything you may have seen or heard when the Court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

4.

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may explain the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in light of reason, experience and common sense.  You should consider both kinds of evidence.  It is for you to decide how much weight to give to any evidence.

5.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says or part of it or none of it.  In considering the testimony of any witness, you may take into account:

1.      The opportunity and ability of the witness to see or hear or know the things testified to;

2.      The witness' memory;

3.      The witness' manner while testifying;

4.      The witness' interest in the outcome of the case and any bias or prejudice;

5.      Whether other evidence contradicted the witness' testimony;

United States District Court

For the Northern District of California

6.    The reasonableness of the witness' testimony in light of all the evidence; and

7.    Any other factors that bear on believability.

**6.**

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  Nor does it depend on which side called the witnesses or produced evidence.

**7.**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or to do something, that is inconsistent with the witness' present testimony.  If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

**8.**

Discrepancies in a witness' testimony or between a witness' testimony and that of other witnesses do not necessarily mean that such witness should be discredited.  Inability to recall is common.  Innocent misrecollection is not uncommon.  Two persons witnessing an incident or a transaction sometimes will see or hear it differently.  Whether a discrepancy pertains to an important matter or only to something trivial should be considered by you.

However, a witness willfully false in one part of his or her testimony is to be distrusted in others.  You may reject the entire testimony of a witness who willfully has testified falsely on a material point, unless, from all the evidence, you believe that the probability of truth favors his or her testimony in other particulars.

**9.**

You have heard testimony from witnesses referred to as "expert witnesses."  These are persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions.  Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness'

5

education and experience, the reasons given for the opinion and all the other evidence in the case. If an expert witness was not present at the events in question, his or her opinion is necessarily based on an assumed set of circumstances.  In evaluating the opinion during the trial, you should take into account the extent to which you do agree or do not agree with the circumstances assumed by the expert witness.

10.

During this trial, you have seen documents that have been redacted or edited in order to protect the privacy of the parties or to protect communications that are privileged. These redactions and edits were not made for any other purpose and should not be considered by you in any way during the decision-making process.

11.

In these instructions, I will often refer to the burden of proof.  Unless otherwise specified, the burden of proof in this case is known as a burden of proof by a preponderance of the evidence. When a party has the burden of proof on any issue by a preponderance of the evidence, it means you must be persuaded by the evidence that the issue is more probably true than not true.  To put it differently, if you were to put the evidence favoring Party No. 1 and the evidence favoring Party No. 2 on opposite sides of a scale, the party with the burden of proof on the issue would have to make the scale tip somewhat toward its side.  If the party fails to meet this burden, then the party with the burden of proof loses on that issue.  Preponderance of the evidence basically means "more likely than not."

12.

Certain facts must be proved by clear and convincing evidence, which is a higher burden of proof than a preponderance of the evidence.  Under a clear and convincing standard, the party with the burden of proof must persuade you that it is highly probable that the fact is true.  I will tell you specifically which facts must be proved by clear and convincing evidence.  If I do not specifically state that a fact must be proved by clear and convincing evidence, you must assume that the burden of proof is by a preponderance of the evidence.

**United States District Court**
For the Northern District of California

13.

We have two lawyers on our jury.  These two jurors must follow these instructions just like the rest of the jury.  These two may not try to give the rest of the jury any legal instructions of their own nor should the non-lawyers ask them to do so.  All of the jurors, including those who are lawyers, of course, are allowed to discuss the evidence and how in their opinions the evidence matches up against the instructions of law, including discussion of the meaning of the instructions.  You should not, however, give extra weight to the views of the lawyer jurors simply because they are lawyers.

14.

Let's now turn to the claims and defenses in this case.  There are three distinct parties who have filed claims:  (i) Halsey Minor, (ii) Christie's Inc., which is a New York corporation, and (iii) Christie, Manson & Woods Ltd., which is a United Kingdom corporation.  It is important to remember that Christie's Inc. and Christie, Manson & Woods are two separate entities.  For that matter, Haunch of Venison is also a separate entity and not a party to this case.  There are three sets of claims in this case.

*First*, plaintiff Halsey Minor has sued defendant Christie's Inc. over two groups of artworks: (i) the Richard Prince artworks and (ii) the artworks he purchased at an auction in New York from Christie's Inc. in April 2008.  I will call these artworks the "Prince artworks" and the "April artworks."  Mr. Minor has the burden of proof on his claims against Christie's Inc.  Christie's Inc. has the burden of proof as to all affirmative defenses asserted against these claims.

*Second*, in a separate set of claims, Christie's Inc. has sued Mr. Minor over artworks that he purchased at an auction in New York from Christie's Inc. on May 21, 2008.  I will call the artworks purchased in May 2008 the "May artworks."  Christie's Inc. has the burden of proof on its claims against Mr. Minor.  However, Mr. Minor has the burden of proof as to all affirmative defenses asserted against these claims.

*Third*, in a separate set of claims, Christie, Manson & Woods has sued Mr. Minor over artworks that he purchased at an auction in London between July 8 and July 9, 2008.  I will call

1    these artworks the "July artworks."  Christie, Manson & Woods has the burden of proof on its

2    claims against Mr. Minor.

3          If you find that a party has carried its burden of proof as to an issue, your verdict should

4    be for that party on that issue.  If you find that a party did not carry its burden of proof as to an

5    issue, you must find against that party on that issue.

6                                                      15.

7          You have heard and seen evidence about a company called Haunch of Venison.  I will

8    refer to Haunch of Venison in the remainder of these instructions as "HOV."  It is not a party to

9    this case.  However, HOV is affiliated with Christie's Inc. and Christie, Manson & Woods, who

10   are both parties to this case.  All three of these companies — HOV, Christie's Inc., and Christie,

11   Manson & Woods — are wholly-owned subsidiaries of a holding company called Christie's

12   International PLC.

13         All three companies must be treated under the law as separate entities.  Because these are

14   separate entities, none of them is responsible for any wrongs of the others.  Nor would possession

15   of artworks by one automatically translate to possession by any other.  Moreover, a contract with

16   one is not automatically a contract with any other.

17                                                     16.

18         There are situations, however, where one person or entity can be held responsible for

19   the conduct of another person or entity.  This normally requires what is called an "agency

20   relationship."  An agency relationship results when one person or entity, called the principal,

21   bestows upon another person or entity, called the agent, the authority to act on its behalf within

22   a specified scope of authority.  So long as the agent acts within the scope of his or her or its

23   authority, the principal is bound by and liable for the acts or omissions of the agent.  A person or

24   entity who acts within the scope of his or her or its authority is an agent and the principal is bound

25   by the acts, statements, and omissions of the agent.  This is called "actual authority."  However,

26   an agent who acts outside the scope of his or her or its authority does not bind the principal

27   through actual authority.

28

**United States District Court**
For the Northern District of California

8

**United States District Court**
For the Northern District of California

17.

Even without "actual authority," the principal may still be held responsible for the conduct or statements of someone or some entity it has clothed with ostensible authority. For ostensible authority to apply, the party who relied thereon must prove all of the following:

        1.    That the principal allowed the impression to be left that the actor was able to act as one of its agents with respect to the transaction at issue;

        2.    That the opposing party reasonably believed that the actor was one of the principal's agents with respect to the transaction at issue; and

        3.    That the opposing party relied to his detriment on this belief.

If you find that ostensible authority existed, the principal will be held responsible for the conduct of the actor to the same extent as if actual authority existed. In the present case, both sides received communications from employees of the other side and you may have to apply the rule concerning ostensible authority to determine whether the employer should be bound by the communications made by the employee. A principal is also charged with all information known by its agents, actual or ostensible. In the absence of actual or ostensible authority, a principal is not bound by unauthorized statements of an employee.

18.

Before turning to the specific claims in this case, I will clarify for you certain agreements that control the questions of right to possession of the artworks in question.

With respect to the Prince artworks, in evaluating both sides' claims and defenses, you will need to determine who had what rights to possession of the Prince artworks and at what times. In turn, this depends on your consideration of: (i) the HOV consignment agreement, (ii) the terms and conditions of the release of the Prince artworks to Christie's Inc. in New York, which occurred on September 2, 2008, and (iii) the conditions of sale of the May 2008 auction and specifically any rights of Christie's Inc. to hold a debtor's property in its possession as collateral. I will now explain to you certain aspects of these matters that are undisputed and certain other aspects which are disputed and which you may have to decide.

The consignment agreement (TX 35) was between HOV and Halsey Minor.  Christie's Inc. was not a party to it.  The consignment agreement provided that HOV would return the Prince artworks to Halsey Minor at the end of the consignment period.  In other words, HOV had a duty to return the Prince artworks to plaintiff or as he directed.  This duty to return was not conditioned on any collateral rights Christie's Inc. may have otherwise had for amounts otherwise owed to it.  Under the consignment agreement, HOV was obligated to return the artworks to Halsey Minor or as he directed.  Thus, if Halsey Minor had directed that HOV deliver them to some independent agent, HOV would have been obligated to do so — regardless of the wishes of Christie's Inc.  Any testimony to the contrary must be disregarded.

Both sides acknowledge that Halsey Minor agreed that the Prince artworks would be delivered to Christie's Inc. in New York and that Christie's Inc. agreed to receive them. The delivery occurred on September 2, 2008.  The parties dispute, however, the terms and conditions of this agreement.  Halsey Minor contends that Christie's Inc. agreed to receive delivery with the understanding that they would be released to Mr. Minor or as directed by him. Christie's Inc. denies that there was any such condition and asserts that once the works came into its possession it was entitled to hold on to them as collateral for debts owed by Mr. Minor.

If Christie's Inc. agreed to receive the artworks on any such understanding as asserted by Halsey Minor, then Christie's Inc. was obligated to honor that understanding and any such understanding superceded any collateral rights Christie's Inc. might otherwise have had for unrelated and unpaid bills.  On the other hand, if Christie's Inc. made no commitment inconsistent with its collateral rights, then it was entitled to exercise any collateral rights it had once it obtained possession of the artworks.

It is for you to determine, from all the evidence, the terms and conditions on which Halsey Minor agreed to deliver and Christie's Inc. agreed to receive the Prince artworks. There was no signed, written agreement specific to this event.  There were, however, communications between the parties leading up to this event.  You must evaluate all of those communications, the prior course of dealing between Christie's Inc. and Halsey Minor, and all other facts and circumstances both sides either knew or should have known.

United States District Court

For the Northern District of California

Both sides must be deemed to have understood the terms and conditions in the same way as reasonable persons in similar circumstances would have understood the communications between the parties in light of all the circumstances known mutually to both sides.  More specifically, if you find that Christie's Inc. knew or should have known that the communications between Christie's Inc. and Halsey Minor leading up to the shipment would have reasonably led Mr. Minor to expect, in light of the prior course of dealing between them and all other circumstances both sides knew or should have known, that Christie's Inc. would release the Prince artworks to him (or as he directed) upon their arrival in New York without regard to any debt to Christie's Inc., then you must find that Christie's Inc. obligated itself to do so.

Conversely, if you find that Halsey Minor knew or should have known that the communications between him and Christie's Inc. leading up to the shipment of the Prince artworks to Christie's Inc. would have reasonably led Christie's Inc. to expect, in light of the prior course of dealing between them and all other circumstances both sides knew or should have known, that Christie's Inc. would be entitled to hold the artworks as collateral for unrelated and unpaid debts, then you must find that Christie's Inc. was entitled to hold the Prince artworks for this purpose.  I repeat, it is for you, the jury, to determine what the mutual and reasonable expectations of the parties would have been surrounding the delivery of the Prince artworks to Christie's Inc.

As a reminder, both sides are charged with knowledge of all communications made by or to their respective agents, both actual and ostensible.  With respect to the consignment agreement, I am instructing you that while the copy of the agreement that you have been provided is not signed by Mr. Minor, he has conceded that he was a party to the contract and that he was bound by it.

19.

To be clear, I am not stating that the auction conditions of sale authorized Christie's Inc. to hold the Prince artworks as collateral for the May auction.  Nor am I saying the opposite.  This is a question you may have to decide.  That is, completely apart from any specific understanding concerning the September 2 shipment, Christie's Inc. had no right to hold the Prince artworks as

collateral unless the conditions of sale authorized Christie's Inc. to hold property unrelated to the auction items as collateral.  That is a question for you to decide, using rules of contract interpretation I give you in these instructions.  There is no dispute in this case as to whether Mr. Minor was bound by the auction conditions of sale but there is a dispute over their meaning.

20.

Interpretation of a contract is a determination of the reasonable and mutual expectations of the parties to a contract, taking into account the words and phrases used and the circumstances surrounding the formation of the contract.  You should start with the words actually used.  When the contract is in writing, the express written language is the primary reference you should consult.  That is because the whole point of a written contract is to reduce the agreement to writing and the only way to do so is through words and phrases.  Words and phrases used by the parties in a contract should be given their usual and ordinary meaning unless it is proven that they had a special meaning accepted by those in the business involved, here high-end art business, or were defined in the contract itself to mean something special.  Sometimes, however, words and phrases as used in a contract are subject to two or more possible meanings.  This is called ambiguity.  To resolve such ambiguities, the law has developed further guidelines for contract interpretation that I will now discuss.  If the agreement is oral, meaning not in writing, it is still important to focus on the words and phrases you find were said in deciding on the meaning of the agreement.

21.

In determining the reasonable and mutual expectations of the parties to the contract, you should also consider the relevant facts and circumstances known to the parties at the time of making the agreement and evaluate how these surrounding circumstances informed the mutual and reasonable expectations of the parties concerning the agreement.  You may consider the circumstances that existed at the time the contract was made, including the apparent purpose of the parties in entering into the contract, the history of negotiations leading up to the contract, and any statements of the parties about their understanding of the contract at the time the contract was entered into.  Facts and circumstances known to both sides of a contract are entitled to more

**United States District Court**
For the Northern District of California

12

weight than facts and circumstances known only to one side of the contract.  That is because our goal is to determine the mutual reasonable intent and expectations of both sides.

22.

The point in time that matters is when the contract was entered into.  You must determine the reasonable and mutual expectations of the parties as of that point in time, based on the history up to that point in time.  You may consider subsequent events, such as any practical construction of the parties in implementing the contract, only as it sheds light on the reasonable and mutual expectations of the parties at the time they made the agreement.

23.

In evaluating evidence of an understanding testified to by a party to a contract, you may take into account whether the interpretation was against the interest of that testifying party rather than in the self-interest of that testifying party.  An admission against one's own interest is usually of more probative value than a self-serving statement.  This is because admissions against interest are usually made only if they are true.  A self-serving interpretation, however, may also be accurate.  It is entirely up to you to decide how much weight to give any witness testimony.

24.

If a term of a contract is ambiguous, you are not limited to the interpretations offered by the two sides but you are free to adopt any reasonable meaning consistent with the actual words of the contract, using the rules of contract interpretation given above.  If, after applying all of the foregoing rules of construction, you are unable to resolve an ambiguity in the meaning of a word or a phrase in the contract, such doubt or ambiguity may be resolved against the party who drafted the contract so long as you adopt a reasonable interpretation of the contract.  This is because the drafter of the contract was in the best position to have avoided an ambiguity in the first place.

25.

Under the law, a creditor may hold onto property of the debtor so long as the creditor acquires possession of the property pursuant to a security agreement, meaning an agreement allowing the creditor to take possession of the property and to hold it as collateral for a debt.  If

United States District Court

For the Northern District of California

13

the creditor acquires possession of the property via a different agreement, then its rights and
obligations are governed by that different agreement.

26.

I will now instruct you on the issues you must decide.  We have worked hard to simplify
and streamline the claims and defenses as well as the number of issues you must decide.  I will
start first with the claims and defenses pertaining to the Prince artworks.  Once those have been
presented, I will turn to the claims and defenses pertaining to the April, May, and July artworks.

27.

With respect to the Prince artworks, there are no claims pleaded in this case for any
alleged contract to sell those artworks for $25 million or breach thereof or for any alleged
misrepresentations concerning the way in which HOV acquired possession of those artworks
in the first place.  You have heard evidence of these supposed events as background only.
Rather, Mr. Minor's claims all focus on events concerning when and after HOV released the
Prince artworks to Christie's Inc. in New York after the end of the consignment period.

28.

Turning to those claims, Mr. Minor asserts a claim against Christie's Inc. for what
is called conversion, which occurs when rightful possession to property is wrongfully
misappropriated.  Specifically, Mr. Minor alleges that he entered into a written consignment
agreement with HOV for the period of May 8 to May 22, 2008.  Pursuant to this agreement,
the Prince artworks were taken to HOV in London.  After the consignment period expired,
Christie's Inc. eventually obtained possession and refused to return the Prince artworks to
Mr. Minor.

29.

In order to prevail on his claim against Christie's Inc. for conversion of the Prince
artworks, Mr. Minor must prove all of the following:

    1.    That Mr. Minor had a right to possess the Prince artworks at the
time of the conversion;

United States District Court
For the Northern District of California

14

United States District Court

For the Northern District of California

2.     That Christie's Inc. wrongfully and intentionally refused to return the Prince artworks to Mr. Minor after he demanded their return;

3.     That Mr. Minor did not consent to the continued possession of the Prince artworks by Christie's Inc. after he demanded their return;

4.     That Mr. Minor was harmed by the refusal to return the Prince artworks by Christie's Inc.; and

5.     That the conduct of Christie's Inc. was a substantial factor in causing Mr. Minor's harm.

30.

The word "intentionally" used in these rules for Mr. Minor's conversion claim simply means that the refusal by Christie's Inc. to return the Prince artworks to Mr. Minor after he demanded their return must have been knowingly or intentionally done.  Whether the act was done in good faith or bad faith is immaterial.

31.

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  A substantial factor must be more than a remote or trivial factor, and conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.  However, a substantial factor does not have to be the only cause of the harm.  A party's conduct may combine with other factors to cause harm.  If you find, however, that a party's conduct was a substantial factor in causing harm, that party cannot escape liability just because some other person, condition, or event was also a substantial factor in causing the same harm.

32.

Mr. Minor has the burden to show that he did not consent to the continued possession of the Prince artworks by Christie's Inc.  The parties dispute whether consent was or was not given.  It is the position of Christie's Inc. that Mr. Minor consented to its possession of the Prince artworks when he agreed to be bound by the conditions of sale for the May artworks.  Mr. Minor's position is to the contrary.  Again, there are two issues here: (i) did the auction

15

United States District Court

For the Northern District of California

1   conditions of sale authorize Christie's Inc. to hold works like the Prince artworks as collateral for

2   the May auction, and (ii) even if it did, did the understanding surrounding the September 2

3   shipment of the Prince artworks supercede any collateral rights of Christie's Inc.  Earlier in these

4   instructions, I addressed these issues.

5                                              33.

6          For a second claim, Halsey Minor asserts a contract claim against Christie's Inc.

7   pertaining to the Prince artworks.  Mr. Minor alleges that he and Christie's Inc. agreed that

8   Christie's Inc. would act as his agent for the specific purpose of accepting the Prince artworks

9   from HOV and subsequently returning them to him or as directed by him.  Mr. Minor asserts that

10  despite receiving the Prince artworks from HOV and despite numerous requests that the Prince

11  artworks be returned to his possession, Christie's Inc. failed to comply with its obligations under

12  the contract.

13                                             34.

14         This type of contract is typically called a contract of bailment.  In deciding whether such

15  a contract was created, you should consider the conduct and relationship of the parties, including

16  their course of dealing and communications leading up to the purported agreement, as well as all

17  the circumstances of the case.  Your inquiry should focus on whether the mutual and reasonable

18  expectations of the parties evidences an agreement to enter into a contract.  This type of contract

19  need not be in writing and may be oral.

20                                             35.

21         In order to prevail on his claim against Christie's Inc. for breach of contract regarding the

22  Prince artworks, Mr. Minor must prove all of the following:

23              1.      That Mr. Minor and Christie's Inc. entered into a contract whereby

24         Mr. Minor and Christie's Inc. agreed that Christie's Inc. would act as his agent for

25         the specific purpose of accepting the Prince artworks from HOV and subsequently

26         returning them to him or as he directed;

27              2.      That Mr. Minor demanded that Christie's Inc. return the artworks

28         to him;

3.      That Christie's Inc. breached the contract by failing to promptly return the artworks to Mr. Minor after he made the demand on Christie's Inc. to return the artworks;

4.      That Mr. Minor was harmed by this breach of contract; and

5.      That the conduct of Christie's Inc. was a substantial factor in causing Mr. Minor's harm.

36.

For a third claim, Halsey Minor asserts a claim of fraud against Christie's Inc. pertaining to the Prince artworks.  Mr. Minor alleges that following the expiration of the consignment period, Christie's Inc. made a knowingly false promise that it would obtain the Prince artworks from HOV and return them to him or as he directed.  Christie's Inc., however, allegedly broke the promise so as to use the artworks as leverage against Mr. Minor, and then kept the Prince artworks in its possession over his objections.

37.

In order to prevail on his claim against Christie's Inc. for fraud based on an alleged false promise, Mr. Minor must prove all of the following:

1.      That Christie's Inc. made a promise to Mr. Minor to accept the Prince artworks from HOV and to promptly return them to him;

2.      That this promise was important to inducing Mr. Minor to allow Christie's Inc. to accept receipt of the Prince artworks from HOV;

3.      That Christie's Inc. knew that it had no intent to perform this promise when it made it;

4.      That Christie's Inc. intended that Mr. Minor rely on this promise;

5.      That Mr. Minor reasonably relied on the promise made by Christie's Inc.;

6.      That Christie's Inc. did not perform the promised act;

7.      That Mr. Minor was harmed due to the non-performance of Christie's Inc.; and

17

**United States District Court**
For the Northern District of California

8.     That Mr. Minor's reliance on the promise made by Christie's Inc. was a substantial factor in causing his harm.

38.

Christie's Inc. raises the affirmative defense of "unclean hands" to these claims.  To establish this defense, Christie's Inc. must prove that Mr. Minor's alleged misconduct was unconscionable and resulted in prejudice to Christie's Inc.  Specifically, Christie's Inc. must prove:

1.     That Mr. Minor's alleged misconduct was intimately connected with his claims against Christie's Inc. for conversion, breach of contract, and/or fraud; and

2.     That Mr. Minor's alleged misconduct is of such a prejudicial nature that it would be unfair to allow him to rely on such claims.

If that is established by Christie's Inc. by a preponderance of the evidence, then Mr. Minor is barred from recovering damages for conversion, breach of contract, and/or fraud.

39.

If you find that Halsey Minor has proven any of his claims concerning the Prince artworks, then the only measure of damages sought herein is an amount sufficient to compensate Mr. Minor for the diminution in value resulting from the alleged conduct by Christie's Inc.  To recover these damages, Mr. Minor must prove:

1.     The amount that the fair market value of the Prince artworks fell during the time period of any wrongful withholding of the property;

2.     That it was reasonably foreseeable that the fair market value of the Prince artworks would decline as a result of the conduct by Christie's Inc.; and

3.     That reasonable care on Mr. Minor's part would not have prevented the loss.

Mr. Minor has the burden to prove each of these elements.  You may not award damages based on speculation or guesswork, but reasonable estimates may be considered.

40.

Now let's turn to Halsey Minor's claim for the April artworks.  Here there is only one claim for you to decide, namely a claim for conversion.

In order to prevail on his claim against Christie's Inc. for conversion as to any item in the April artworks, Mr. Minor must prove all of the following:

1.    That Mr. Minor demanded delivery of the items;

2.    That Mr. Minor had a right to possession of the items when he made the demand;

3.    That Christie's Inc. wrongfully and intentionally refused to deliver the items after the demand was made;

4.    That Mr. Minor did not consent to the continued possession of the items by Christie's Inc. after the demand was made;

5.    That Mr. Minor was harmed by the refusal to deliver the items by Christie's Inc.; and

6.    The conduct of Christie's Inc. was a substantial factor in causing the harm.

In deciding some of these elements, you will need to consider the conditions on which the April artworks were sold as well as the conditions of sale for the May artworks.  It is for you to decide the extent to which Christie's Inc. had a right to hold paid-up items (if you find that they were paid up) as collateral for other unpaid-for items.  In doing this, you should apply the rules of contract interpretation already described in these instructions.

41.

For Mr. Minor's claim concerning the April artworks, he is only seeking nominal damages of one dollar.  If you find that Mr. Minor has proven his conversion claim for the April artworks, then you must award that amount.

42.

I will now turn to the counterclaims being brought by Christie's Inc. against Mr. Minor. The first claim brought by Christie's Inc. is for breach of contract.  Specifically, Christie's Inc.

1   asserts that Mr. Minor failed to pay for artworks that he bid on and won on May 21, 2008, at an

2   auction in New York.  Christie's Inc. asserts that Mr. Minor was bound to pay for the May

3   artworks under the applicable conditions of sale.

                                              43.

5         It is undisputed that Mr. Minor was bound to the conditions of sale for the May artworks,

6   and that payment was due within 90 days for these artworks.  It is also undisputed that Mr. Minor

7   did not pay Christie's Inc. anything for the May artworks.  Because these facts are not disputed,

8   the sole liability issue for you to decide is whether Mr. Minor can prove an affirmative defense

9   that will excuse him from his obligation to pay.

                                              44.

11        With respect to this breach of contract claim, Mr. Minor raises the affirmative defense of

12  excuse for non-performance.  When one party to a contract prevents or delays the other party

13  from performing an obligation under the contract, the lack of performance is excused.  If you find

14  by a preponderance of the evidence that Christie's Inc. prevented or delayed Mr. Minor from

15  performing his obligations under the conditions of sale for the May artworks, you should excuse

16  Mr. Minor's failure to pay for the May artworks.

                                              45.

18        For a second claim, Christie's Inc. alleges that Mr. Minor committed fraud when he bid

19  on the May artworks.  Specifically, Christie's Inc. alleges that at the time Mr. Minor promised to

20  pay for the May artworks according to the terms set forth in the conditions of sale, he had no

21  intention of paying for the artworks.

                                              46.

23        In order to prevail on its claim against Mr. Minor for fraud based on an alleged false

24  promise, Christie's Inc. must prove all of the following:

25            1.    That Mr. Minor made a promise to Christie's Inc. to pay for the

26        May artworks prior to and following his purchase of the May artworks;

27

28

                                              20

**United States District Court**
For the Northern District of California

2.      That this promise was important to inducing Christie's Inc. to allow Mr. Minor to complete the bidding process as the highest bidder on the sales of each of the May artworks;

3.      That Mr. Minor knew that he had no intent to perform this promise when he made it;

4.      That Mr. Minor intended that Christie's Inc. rely on this promise;

5.      That Christie's Inc. reasonably relied on Mr. Minor's promise;

6.      That Mr. Minor did not perform the promised act;

7.      That Christie's Inc. was harmed due to Mr. Minor's non-performance; and

8.      That the reliance by Christie's Inc. on Mr. Minor's promise was a substantial factor in causing its harm.

47.

If you find that Christie's Inc. has proven any of its claims concerning the May artworks, then the only measure of damages sought herein is an amount sufficient to compensate Christie's Inc. for the claimed wrong. This is an amount that would put Christie's Inc. in the same economic position as it would have been had the wrong not occurred.

While the purchase price for the May artworks was in the millions, this included a "buyer's premium" in the amount of $637,000. Had the sale of the May artworks proceeded as planned, Christie's Inc. would only have been entitled to keep the buyer's premium, not the full purchase price.

Christie's Inc. has the burden to prove the amount of damages it has suffered. You may not award damages based on speculation or guesswork.

48.

Finally, the claims brought by Christie, Manson & Woods against Mr. Minor are almost identical to the claims brought by Christie's Inc against Mr. Minor except they pertain to the July auction in London. Christie, Manson & Woods' first claim against Mr. Minor is for breach of contract. Specifically, Christie, Manson & Woods asserts that Mr. Minor failed to pay for

artworks that he bid on and won during a Christie, Manson & Woods auction in London that occurred on July 8 and 9, 2008.  Christie, Manson & Woods asserts that Mr. Minor was bound to pay for the July artworks under the applicable conditions of sale.

49.

It is undisputed that Mr. Minor was bound to the conditions of sale for the July artworks, and that payment was due within 90 days for these artworks.  It is also undisputed that Mr. Minor did not pay Christie, Manson & Woods anything for the July artworks.  Because these facts are not disputed, and because Mr. Minor has not asserted any affirmative defenses to this claim, the sole issue for you to decide is whether Christie, Manson & Woods has proven any damages for its breach of contract claim.

50.

For a second claim, Christie, Manson & Woods alleges that Mr. Minor committed fraud when he bid on the July artworks.  Specifically, Christie, Manson & Woods alleges that at the time Mr. Minor promised to pay for the July artworks according to the terms set forth in the conditions of sale, he had no intention of paying for the artworks.

51.

In order to prevail on its claim against Mr. Minor for fraud based on an alleged false promise, Christie, Manson & Woods must prove all of the following:

1.    That Mr. Minor made a promise to Christie, Manson & Woods to pay for the July artworks prior to and following his purchase of the July artworks;

2.    That this promise was important to inducing Christie, Manson & Woods to allow Mr. Minor to complete the bidding process as the highest bidder on the sales of each of the July artworks;

3.    That Mr. Minor knew that he had no intent to perform this promise when he made it;

4.    That Mr. Minor intended that Christie, Manson & Woods rely on this promise;

United States District Court
For the Northern District of California

22

United States District Court

For the Northern District of California

1          5.      That Christie, Manson & Woods reasonably relied on Mr. Minor's

2 promise;

3          6.      That Mr. Minor did not perform the promised act;

4          7.      That Christie, Manson & Woods was harmed due to Mr. Minor's

5 non-performance; and

6          8.      That Christie, Manson & Woods' reliance on Mr. Minor's promise

7 was a substantial factor in causing its harm.

8 52.

9 If you find that Christie, Manson & Woods has proven any of its claims concerning the

10 July artworks, then the only measure of damages sought herein is an amount sufficient to

11 compensate Christie, Manson & Woods for the claimed wrong.  This is an amount that would put

12 Christie, Manson & Woods in the same economic position as it would have been had the wrong

13 not occurred.

14 While the purchase price for the July artworks was in the millions, this included a

15 "buyer's premium" in the amount of $[counsel to supply].  Had the sale of the July artworks

16 proceeded as planned, Christie, Manson & Woods would only have been entitled to keep the

17 buyer's premium, not the full purchase price.

18 Christie, Manson & Woods has the burden to prove the amount of damages it has

19 suffered.  You may not award damages based on speculation or guesswork.

20 53.

21 Mr. Minor, Christie's Inc., and Christie, Manson & Woods have each asserted multiple

22 claims in this case.  If you decide that a party has proven more than one of its claims, the same

23 damages that resulted from multiple claims can be awarded only once to the prevailing party.

24 In other words, if a party prevails on two of its claims, and the harm caused by those two claims is

25 the same, the prevailing party is not entitled to double recovery or a windfall.

26 54.

27 Any party who suffers damage as a result of any of the claims in this case has a duty to

28 take reasonable steps to mitigate those damages and will not be able to recover for any losses

23

United States District Court
For the Northern District of California

1   which could have been reasonably avoided.  If you decide an accused party is responsible for the

2   original harm, the prevailing party will not be entitled to recover damages for harm to his

3   property that the accused party proves the prevailing party could have avoided with reasonable

4   efforts or expenditures.

5       You should consider the reasonableness of the prevailing party's efforts in light of the

6   circumstances at the time, including the prevailing party's ability to make the efforts or

7   expenditures without undue risk or hardship.  If the prevailing party made reasonable efforts to

8   avoid harm, then your award should include reasonable amounts that the prevailing party spent

9   for this purpose.

10                                          55.

11      In addition to compensatory damages, all of the parties seek an award of punitive

12  damages.  Punitive damages are damages above and beyond the amount of compensatory (or

13  nominal) damages you may award.  Unlike compensatory damages, punitive damages are

14  awarded to punish the accused party for its conduct and to serve as an example to prevent others

15  from acting in a similar way.  Under no circumstances may you award punitive damages for a

16  breach of contract claim.  However, you may award punitive damages for claims of conversion

17  and fraud if the party who asserted the claim has proven *by clear and convincing evidence* that the

18  accused party acted with malice, oppression, or fraud.

19      You may conclude that the accused party acted with a state of mind justifying punitive

20  damages based on direct evidence or based on circumstantial evidence from the facts of the case.

21  As explained earlier, clear and convincing evidence means evidence of such convincing force that

22  it demonstrates, in contrast to the opposing evidence, a high probability of the truth of the facts

23  for which it is offered as proof.

24      If you decide that punitive damages should be awarded, you will have a short

25  supplemental proceeding immediately following your verdict in order to receive more evidence

26  and argument as to the amount that should be awarded.

27

28

24

56.

When you begin your deliberations, you should elect one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in court.  I recommend that you select a foreperson who will be good at leading a fair and balanced discussion of the evidence and the issues.

57.

In your deliberations it is usually a mistake to take a straw vote early on.  This is due to the risk of jury members expressing a premature opinion and then, out of pride, digging their heels.  Rather, it is usually better to discuss the evidence, pro and con, on the various issues before proceeding to take even a straw vote.  In this way, all the viewpoints will be on the table before anyone expresses a vote.  These are merely recommendations, however, and it is up to you to decide on how you wish to deliberate.

58.

Your verdict as to each claim and as to damages, if any, must be unanimous.  Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

59.

Do not be afraid to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.  It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

60.

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

United States District Court

For the Northern District of California

61.

When you retire to the jury room to deliberate, the Clerk will bring you the following:

        1.      All of the exhibits received into evidence;

        2.      An index of the exhibits;

        3.      A work copy of these jury instructions for each of you;

        4.      A work copy of the verdict form for each of you; and

        5.      An official verdict form.

You do not have to discuss the questions in the strict sequence indicated in the special verdict form, but you must, by the end, answer them unanimously as indicated in the form.

When you recess at the end of a day, please place your work materials in the brown envelope provided and cover up any easels containing your work notes so that if my staff needs to go into the jury room, they will not even inadvertently see any of your work in progress.

62.

A United States Marshal will be outside the jury-room door during your deliberations. If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the Court.

63.

You have been required to be here each day from 7:45 a.m. to 1:00 p.m.  Now that you are going to begin your deliberations, however, you are free to modify this schedule within reason.  For example, if you wish to continue deliberating in the afternoons after a reasonable

United States District Court

For the Northern District of California

1   lunch break, that is fine.  The Court does, however, recommend that you continue to start your

2   deliberations by 8:00 a.m.

3        It is very important that you let the Clerk know in advance what hours you will be

4   deliberating so that the lawyers may be present in the courthouse at all times the jury is

5   deliberating.

6                                          64.

7        You may only deliberate when all of you are together.  This means, for instance, that in

8   the mornings before everyone has arrived, or when someone steps out of the jury room to go to

9   the restroom, you may not discuss the case.  As well, the admonition that you are not to speak to

10  anyone outside the jury room about this case still applies during your deliberation.

11                                         65.

12       After you have reached a unanimous agreement on a verdict, your foreperson will fill

13  in, date and sign the verdict form and advise the Court through the marshal that you have reached

14  a verdict.  The foreperson should hold on to the filled-in verdict form and bring it into the

15  courtroom when the jury returns the verdict.  Thank you for your careful attention.  The case is

16  now in your hands.  You may now retire to the jury room and begin your deliberations.

17

18

19

20  Dated: May 20, 2010.                    _____

                                            WILLIAM ALSUP
21                                          UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

27