IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALSEY MINOR, an individual, | No. C 08-05445 WHA (Lead Case) |
| Plaintiff, | Consolidated with: |
| v. | No. C 09-00471 WHA |
| CHRISTIE'S INC., a New York corporation, and DOES 1 through 20, inclusive, | |
| Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART HALSEY MINOR'S MOTION TO AMEND THE JUDGMENT AND VACATING HEARING** |
| AND RELATED COUNTERCLAIMS. | |
| CHRISTIE, MANSON & WOODS, LTD., a United Kingdom corporation, | |
| Plaintiff, | |
| v. | |
| HALSEY MINOR, an individual, and ROES 1 through 20, inclusive, | |
| Defendants. | |

**INTRODUCTION**

Following a two-week jury trial in which all three parties to this consolidated action prevailed on the lion's share of their respective claims, plaintiff Halsey Minor moves to amend

1  the judgment entered on May 21, 2010.[1]  Specifically, Minor requests that the judgment be
2  amended to reflect: (1) the jury's nominal award of one dollar relating to his conversion claim
3  involving artworks he won at an auction in April 2008, (2) a declaration that he is the legal owner
4  and entitled to the immediate possession of these April artworks, and (3) prejudgment interest on
5  his claims targeting the April artworks and the Richard Prince artworks.  For the reasons set forth
6  below, Minor's motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

The path to trial in this action was as direct as they come.  None of the parties filed a motion to dismiss or a motion for summary judgment in either of the two consolidated cases.  There were no discovery disputes.  In fact, leading up to trial, the only request presented to the undersigned was a stipulation seeking to continue the trial date for six weeks to allow further settlement negotiations.  The request was granted.  The case did not settle.  The trial went as scheduled.

The procedural history is therefore simple.  Plaintiff Halsey Minor filed the lead action against defendant Christie's Inc. (hereinafter "Christie's") in December 2008 (Dkt. No. 1).  His claims targeted two sets of artworks: (1) a set of paintings by American artist Richard Prince and (2) artworks that Minor supposedly won and paid for at auctions held by Christie's in New York City in April 2008 (Dkt. No. 27).  Christie's, in turn, filed numerous counterclaims against Minor targeting artworks that he had allegedly won but never paid for at two auctions in New York City in May 2008 (Dkt. No. 32).

Not to be left out, in February 2009, Christie, Manson & Woods Ltd. ("CMW") — a London-based auction house and sister company of Christie's — filed its own action against Minor targeting artworks that Minor had allegedly won but never paid for at a London auction in July 2008 (Dkt. No. 1, Case No. 09-00471).  Shortly after being filed, that dispute was related to and consolidated with the lead action (Dkt. No. 35).

---

[1] *See* Dkt. No. 133 (Case No. 08-05445); Dkt. No. 39 (Case No. 09-00471).  Unless otherwise noted, all docket entries in this order refer to the lead action, Case No. 08-05545.

A two-week jury trial commenced on May 10, 2010. Following a day and a half of deliberations, the jury returned a unanimous verdict finding that all parties had proven the bulk of their claims (*see* Dkt. No. 131). Specifically, the jury found that plaintiff Minor had proven by a preponderance of the evidence that defendant Christie's was liable for conversion, breach of a contract of bailment, and fraud with respect to its actions involving the Prince artworks. The jury also found Christie's liable to Minor for conversion with respect to the April artworks. As a result of these findings, the jury awarded damages to Minor in the amount of $8,570,000 for the Prince artworks and one dollar in nominal damages for the April artworks. The jury did not, however, find that Minor had proven any entitlement to punitive damages.

All was not lost for Christie's, however. With respect to Christie's counterclaims against Minor, the jury found that Christie's had proven by a preponderance of the evidence that Minor was liable for breach of contract with respect to the May artworks. The jury did not, however, find Minor liable for fraud relating to these artworks. A total of $417,000 in contract damages was awarded to Christie's based upon these findings.

Similarly, with respect to the consolidated case, the jury found that plaintiff CMW had proven by a preponderance of the evidence that defendant Minor was liable for breach of contract with respect to the July artworks. The jury did not, however, find Minor liable for fraud relating to these artworks. A total of $994,716.06 in contract damages was awarded to CMW based upon these findings.

A flurry of post-trial motions were filed by the parties. *First*, both sides moved for attorney's fees and costs (Dkt. Nos. 151, 152). *Second*, on that same day, plaintiff Minor filed the instant motion seeking amendment of the May 21 judgment (Dkt. No. 149). *Third*, two weeks after Minor filed the instant motion, Christie's and CMW jointly moved for prejudgment interest on their respective contract claims (Dkt. No. 158). Both attorney's fees motions and the motion to amend the judgment filed by Christie's and CMW (which is not yet fully briefed) will be addressed by separate orders. *Fourth*, both sides jointly moved for an order staying the execution of the judgment pending appeal (Dkt. No. 167). That motion was granted.

3

1    Notably, neither side moved for judgment as a matter of law under FRCP 50 or for a new
2 trial under FRCP 59.  Since more than 28 days have passed since judgment was entered in this
3 action, the deadline for filing such motions has expired.

## ANALYSIS

5    The instant motion seeks to amend the May 21 judgment to include:  (1) the jury's award
6 of one dollar in nominal damages relating to Minor's conversion claim against Christie's
7 involving the April artworks, (2) a declaration that Minor is the legal owner and entitled to the
8 immediate possession of these April artworks, and (3) prejudgment interest on Minor's claims
9 targeting both the April artworks and the Richard Prince artworks.

### 1.    NOMINAL DAMAGES FOR THE APRIL ARTWORKS

11    As summarized earlier in this order, the jury unanimously awarded Minor $8,570,000 for
12 his claims against Christie's pertaining to the Prince artworks (Dkt. No. 131).  The jury also
13 awarded Minor one dollar in nominal damages for his conversion claim against Christie's
14 targeting the April artworks (*ibid.*).  The judgment entered on May 21, however, did not reflect
15 the one dollar award.  Rather, it stated that "[i]n Case No. 08-05445, judgment is entered in favor
16 of plaintiff Halsey Minor and against defendant Christie's Inc. in the total amount of $8,570,000"
17 (Dkt. No. 133).  This omission was inadvertent.

18    Accordingly, plaintiff's motion to amend the judgment to reflect the one dollar nominal
19 damages award for the April artworks conversion claim is **GRANTED**.  This amendment properly
20 conforms the judgment to the jury's unanimous verdict.

21    The arguments raised by Christie's in its opposition are both unpersuasive and improper.
22 Christie's essentially argues that it "cannot be liable for conversion of the April Artworks, and
23 thus Minor is not entitled to nominal damages, because Minor failed to prove an essential element
24 of the tort of conversion — that he had a right to possess the April Artworks" (Opp. 2).  To
25 support this position, Christie's points to various portions of the trial record showing that Minor
26 conceded that he did not pay any sales tax on the April artworks.  Thus, according to Christie's,
27 the "jury's verdict was against the weight of the evidence" (*id.* at 3).

4

This argument is rejected. *First*, Christie's is essentially asking the Court to set aside the jury's verdict on the April artworks and enter judgment as a matter of law. This order declines to do so. It is undisputed that neither side filed Rule 50 motions within 28 days of the entry of the original judgment. This argument by Christie's is therefore untimely.

*Second*, even when considered on the merits, the "tax" argument fails. Under California Revenue and Taxation Code Section 6201, "[a]n excise tax is . . . imposed on the storage, use, or other consumption in this state of tangible personal property purchased from any retailer . . . for storage, use, or other consumption in this state . . .". This tax is called a "use tax," and it is distinguished from California "sales tax." The differences are worth noting.

For "the privilege of selling tangible personal property at retail" within California, in-state retailers are required to submit their gross receipts from California sales and remit the applicable sales tax to the Board of Equalization. *See* Cal. Rev. & Tax. Code § 6051. Whether or not a retailer collects the sales tax from its purchasers, the *retailer* is liable to remit the tax due.[2]

When the sales tax does not apply, and the transaction is not otherwise exempt, Section 6201 imposes a use tax on "the storage, use, or other consumption in California of tangible personal property purchased from any retailer," measured by a percentage of the sales price of the property. *See* Cal. Rev. & Tax. Code §§ 6201, 6401. Unlike the sales tax, primary liability for the use tax is imposed on the person storing, using, or otherwise consuming the tangible personal property. *See* Cal. Rev. & Tax. Code § 6202. In other words, the *purchaser* is responsible for paying this tax to the state.

An exception to this rule is if the out-of-state retailer is also "engaged in business in this state" — which encompasses, among other things, maintaining an office or other place of business within California. *See* Cal. Rev. & Tax. Code § 6203. If this exception applies, the *retailer* is required to collect from the purchaser a use tax in lieu of the sales tax imposed upon local retailers and provide the purchaser with a receipt evidencing payment of the tax. With this

---

[2] While it has become customary for California retailers to charge sales tax to customers, it is not required under these code sections. California law does, however, allow in-state retailers to pass their sales tax obligations on to customers. Most, if not all, do.

5

receipt in hand, the purchaser is then relieved of liability to the state for paying the use tax. *Ibid.* The retailer would then be on the hook for paying the state.

Importantly, none of these California code sections addresses who, as between a retailer and purchaser, has the right to ownership or possession of tangible personal property purportedly sold by the retailer to the purchaser. Rather, these code sections merely set forth the laws governing who is liable *to the state* for paying the applicable taxes, whether "sales tax" or "use tax."

Given this backdrop, nothing in the California Revenue and Taxation Code required Minor to pay a separate amount of "taxes" to Christie's to obtain legal title and the right to possession of the April artworks. While it is possible that Minor may be liable to the state for unpaid use taxes under Section 6202 (an issue on which this order takes no position), this would not divest him of superior ownership and possessory rights as to Christie's regarding the April artworks. Similarly, if Christie's was required to collect the use tax under Section 6203 but failed to do so, it is *Christie's* — not Minor — who is indebted to the state for the unpaid taxes. *See* Cal. Rev. & Tax. Code § 6204. Either way, these tax issues have nothing to do with Minor's ownership and possessory rights regarding the April artworks. The jury considered the evidence presented by both sides and found that Minor was entitled to immediate possession of the April artworks in the context of his conversion claim.

### 2. DECLARATION THAT MINOR IS THE LEGAL OWNER AND ENTITLED TO IMMEDIATE POSSESSION OF THE APRIL ARTWORKS

With respect to the April artworks, Minor also seeks a declaration that, as between the parties to this action, he is the legal owner and entitled to immediate possession of the April artworks. Christie's opposes this request on three separate grounds: *First*, Christie's argues that Minor waived any right to seek such declaratory relief. *Second*, Christie's argues that the emergence of third-party creditors, including Sotheby's and the California Franchise Tax Board, bars such a declaration. *Third*, Christie's repeats its argument — already addressed above — that Minor's failure to pay a separate "sales tax" amount voids his right to possession as a matter of law. As explained below, Christie's arguments fail to hit the mark, and Minor is entitled to the requested declaration of his rights.

6

Under both California law and federal law, a court has the power to declare the rights and other legal relations of any interested party seeking such a declaration. *See* Cal. Civ. Proc. Code § 1060; *see also* 28 U.S.C. 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). Given that Minor alleged that he had "paid in full" for the April artworks but failed to receive delivery of them, the requirement of an actual controversy was clearly met. Moreover, Minor's operative complaint sought exactly what his instant motion now requests: "a judicial determination and declaration . . . that [Minor] is the owner and entitled to the immediate possession of the . . . April Artworks" (Compl. ¶ 82). Given that the jury (1) found Christie's liable for conversion of the April artworks and (2) awarded only nominal damages to Minor, this order finds that a declaration that Minor is the legal owner and entitled to immediate possession of the April artworks is both equitable and proper. Minor's request is therefore **GRANTED**.

Christie's arguments to the contrary are unpersuasive. *First*, Minor did *not* waive his right to seek this equitable relief from the Court. During trial, and out of the presence of the jury, the undersigned engaged in a discussion with counsel regarding the relief sought by Minor for the April artworks. In this exchange, Minor's counsel, Eric George, clarified the intentions of his client (Tr. 1187):

> MR. GEORGE: We just want them returned. It's not a question of monetary damages. It's a question for injunctive relief.

When pressed by the undersigned as to whether this was a question for the jury or for the Court, Attorney George then explained that "to the extent that it's a declaratory-relief issue, it would be ultimately for the Court" (*id.* at 1187–88). At no point during this exchange did counsel waive the right to seek the declaratory relief prayed for in the operative complaint or in the instant motion. Rather, he affirmed his intention to seek such relief.

*Second*, the undersigned already made clear at trial that any declaration of ownership or possession rights would be appropriately limited to the parties in this action. Indeed, this very topic was addressed when counsel for Christie's, Jose Allen, informed the Court that his client

7

had "received a writ from the U.S. Marshals from the Southern District [of New York], following the entry of judgment against Mr. Minor in the Sotheby's lawsuit against him, in which the Marshal is directing Christie's to turn over any artworks belonging to Mr. Minor in its possession" (Tr. 1185). This led to the following exchange (*id*. at 1186) (emphasis added):

> THE COURT: How would that fit into our trial here?
>
> MR. ALLEN: Well, it fits in to the extent that Mr. Minor is asking for declaratory judgment that he is now entitled to those artworks, I believe the writ proceeding throws a huge monkey wrench —
>
> MR. GEORGE: No.
>
> MR. ALLEN: — in that dec.-relief request.
>
> THE COURT: The most that could be — no, that's not quite right. *The most that could be granted in this case would be as between Christie's and the plaintiff, who has the right to possession. It would not be adjudicating the rights of third-party creditors.*

In sum, any declaration of rights in this action pertaining to the April artworks would be limited to the rights *as between Halsey Minor and Christie's*. Nothing in this order or judgment shall be construed as adjudicating the rights of third-party creditors.

*Third*, this order has already rejected the argument raised by Christie's that the non-payment of "sales tax" by Minor bars his right to possession. By contrast, the record shows that the jury was properly instructed on the required elements of a conversion claim under California law. One of these elements was whether "Mr. Minor had a right to possession of the [April artworks] when he made the demand" for their delivery (Dkt. No. 125 at 18; Tr. 1835). The jury considered the evidence presented by both sides and unanimously found that Christie's was liable for conversion of the April artworks. Inherent in this determination of liability was the jury's finding that Minor had a superior right to possession of these artworks.

In sum, none of the arguments raised by Christie's requires a different result. Minor prevailed on his conversion claim after presenting evidence to the jury that he had paid in full for the April artworks. The jury did *not* accept Christie's position that Minor owed an additional payment of sales tax. Since Minor was only awarded one dollar in nominal damages for this claim, he is entitled — under principles of equity — to a declaration that "as between the parties

8

to this action, Halsey Minor has the superior right to ownership and possession of the April artworks."

This declaration is subject, of course, to any lawful writ that may be applicable. For example, Christie's may well be obligated to turn the April artworks over to the marshal in New York (to make good on Minor's judgment debt there) rather than to Minor directly. That, however, is a fight to be conducted in New York.

### 2. PREJUDGMENT INTEREST ON CONVERSION OF THE APRIL ARTWORKS

At trial, the undersigned instructed the parties that any requests for prejudgment interest would have to be brought in the form of a post-trial motion to amend the judgment (Tr. 1864–65). In the instant motion, Minor now seeks an award of prejudgment interest at a rate of seven percent per annum for both the April artworks and the Richard Prince artworks. This order will address the April artworks first.

In federal diversity actions, state law governs whether a litigant is entitled to an award of prejudgment interest. *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007). In this connection, California Civil Code § 3336 set forth the following rule regarding wrongfully converted property:

> The detriment caused by the wrongful conversion of personal property is presumed to be:
>
> First--The value of the property at the time of the conversion, *with the interest from that time*, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and
>
> Second--A fair compensation for the time and money properly expended in pursuit of the property.

Cal. Civ. Code § 3336 (emphasis added).[3]

Nevertheless, this order concludes that Minor's request for pre-judgment interest on the April artworks cannot be granted. As noted earlier in this order, Minor made the conscious

---

[3] It should be noted that Section 3287 of the California Civil Code provides a broader rule for recovery of prejudgment interest on damages certain or capable of being made certain by calculation. Section 3287 is not applicable here, however, because Minor specifically seeks recovery under Section 3336, which does not require that damages be capable of ascertainment before prejudgment interest can be awarded.

9

1  decision during trial to seek only nominal damages for these artworks (Tr. 1187). In the words of
2  his counsel, Attorney George, the conversion claim targeting the April artworks was "not a
3  question of monetary damages" (*ibid.*). Rather, Minor's goal was to gain possession of these
4  artworks. As a consequence of this strategic move, the jury was not asked to calculate any actual
5  damages pertaining to the April artworks. Similarly, no evidence was presented by either side as
6  to the value of these artworks at the time of the alleged conversion. When the special verdict
7  form was read, there was no finding by the jury as to the value of the April artworks at the time of
8  the conversion, or any hint of such an amount. This is fatal to any calculation and award of
9  prejudgment interest on the April artworks.

Cognizant of this deficiency, Minor proposes that his payments made for the April artworks can be used as a proper measuring point to calculate prejudgment interest under Section 3336 (Reply 7–8). According to Minor, since Christie's admitted in its pleadings to receiving these particular payments of money on particular dates, prejudgment interest can be based upon those figures. This order disagrees. As Section 3336 clearly states, interest may only be awarded from the time of the conversion. The jury was not asked to find, however, *when* the conversion of the April artworks took place. It would not be proper for the Court to assume that this occurred at the time Minor submitted his payments, nor would it be proper for the Court to act as the fact-finder and conclude, after weighing the evidence, that once Minor had made these payments for the April artworks, any possession thereafter by Christie's constituted conversion.[4]

Minor also points to supposedly undisputed evidence that Christie's received and acknowledged his demand for the April artworks no later than August 4, 2008 (Reply 8). Thus, according to Minor, prejudgment interest can be safely measured from that date using the aforementioned purchase prices. This argument also fails. Given that Minor's damages theory for the Prince artworks was premised upon evidence of wildly fluctuating market values for artwork during this time period, this order cannot assume or conclude that the purchase price of

---

[4] Such a finding would also be contrary to law, as merely paying for an item does not — without more — meet the requirements for conversion. Specifically, even if Minor's payments to Christie's gave him a superior right to ownership and possession, there is no basis for this order to assume that all of the other elements of conversion were satisfied when he made those payments.

10

the April artworks would accurately reflect their market value nearly three months later, when Minor supposedly made his demand for the artworks.

In conclusion, because the jury was only asked to make findings sufficient to support a determination of liability and an award of nominal damages for Minor's conversion claim targeting the April artworks, the motion for prejudgment interest must be and is **DENIED**.

### 3. PREJUDGMENT INTEREST ON CONVERSION OF THE PRINCE ARTWORKS

In contrast to the April artworks, the jury *was* instructed to calculate actual damages pertaining to Christie's alleged conversion of the Prince artworks. On this point, the jury was instructed as follows (Tr. 1834–35):

> If you find that Halsey Minor has proven any of his claims concerning the Prince artworks, then the only measure of damages sought herein is an amount sufficient to compensate Mr. Minor for the diminution in value resulting from the alleged conduct by Christie's Inc. To recover these damages, Mr. Minor must prove:
>
> 1. The amount that the fair market value of the Prince artworks fell during the time period of any wrongful withholding of the property;
>
> 2. That it was reasonably foreseeable that the fair market value of the Prince artworks would decline as a result of the conduct by Christie's Inc.; and
>
> 3. That reasonable care on Mr. Minor's part would not have prevented the loss.

After deliberating, the jury awarded Minor $8,570,000 for this conversion claim (Tr. 1859).

A careful reading of Section 3336, however, reveals that two approaches to calculating damages for a claim of conversion are set forth in the first paragraph. These approaches are presented in the disjunctive. The first is to compensate the injured party for the value of the property at the time of conversion with interest from the time of the taking. The second is to provide compensation sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted. Importantly, the second approach does *not* authorize the award of prejudgment interest.

Of these two approaches to calculating conversion damages, only the second was presented to the jury. This was both intentional and proper. Given the evidence that had been

11

1  presented at trial and the theory of damages being advanced by Minor, an award of the full value
2  of the Prince artworks at the time of the conversion would not have been appropriate.  This is
3  because all of the Prince artworks were eventually returned to Minor, and each continued to carry
4  significant (albeit diminished) market value.  It would not have been proper to allow Minor to
5  recover the full value of the Prince artworks at the time of the conversion while also allowing him
6  to reap the benefits of selling them at their diminished — but still multi-million dollar — value.

7  As noted above, however, prejudgment interest is *not* authorized under Section 3336 when
8  the measure of conversion damages isn't measured by "[t]he value of the property at the time of
9  the conversion."  It is clear, from both the jury instructions and the amount of damages awarded,
10 that the jury did *not* award Minor the value of the Prince artworks at the time of conversion.
11 Rather, Minor was awarded the diminution in the market value of the artworks during the
12 conversion period — *i.e.* an amount sufficient to indemnify him for the loss that was the natural,
13 reasonable and proximate result of Christie's wrongful possession.

14 Given this backdrop, this order concludes that Minor has not proven entitlement to
15 prejudgment interest under Section 3336 for his conversion claim targeting the Prince artworks.
16 Minor's request for prejudgment interest is therefore **DENIED**.

## CONCLUSION

18 For the reasons stated above, plaintiff's motion is **GRANTED IN PART AND DENIED IN**
19 **PART**.  An amended judgment shall be entered reflecting the one dollar nominal damages award
20 pertaining to the April artworks and a declaration that "as between the parties to this action,
21 Halsey Minor has the superior right to ownership and possession of the April artworks."  The
22 hearing on this motion is **VACATED**.

**IT IS SO ORDERED.**

Dated: July 12, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE