**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALSEY MINOR, an individual, | No. C 08-05445 WHA |
| Plaintiff, | and |
| v. | No. C 09-00471 WHA |
| CHRISTIE'S INC., a New York corporation, and DOES 1 through 20, inclusive, | |
| Defendants. | |
| CHRISTIE'S, INC., a New York corporation, | **ORDER RESOLVING OBJECTIONS TO SPECIAL MASTER'S REPORT, ADOPTING SPECIAL MASTER'S REPORT AND RECOMMENDATION, AND FIXING SPECIAL MASTER'S COMPENSATION** |
| Counterclaimant, | |
| v. | |
| HALSEY MINOR, an individual, and ROES 1 through 20, inclusive, | |
| Counterdefendants. | |

**INTRODUCTION**

This order resolves Halsey Minor's objections to the special master's report and recommendation regarding attorney's fees and costs, and it adopts the special master's report and recommendation in its entirety.

**STATEMENT**

"The 'attorney's fee' tail must not be allowed to wag the 'merits' dog." *Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir. 1984) (Burns, C.J. concurring and dissenting). This action, now in its death throes, is approaching just that. The trial and limited pretrial history have been recounted previously (Dkt. No. 182). Only the post-trial attorney's fee fracas is recounted briefly here.

In July 2010 — a full *eight months ago* — it was determined that both sides were entitled to some attorney's fees, and the parties were directed to submit declarations detailing the amount of fees sought (Dkt. Nos. 180, 181). The parties did so. As ordered, the parties then filed objections to each other's requests, and they also met and conferred in an effort to resolve the objections. The meet-and-confer efforts were unsuccessful. It was determined that the parties' fee dispute should be resolved by a special master under Rule 53, and after a series of difficulties — including the parties' failure to agree upon proposed candidates, as well as the appointment and withdrawal of a first special master — Ellen K. Eagen was appointed as special master to oversee the attorney's fees and costs dispute (Dkt. No. 241).

The parties submitted their motion papers and supporting documents to the special master, and they also submitted supplemental briefing that she later requested. The special master held at least one hearing via teleconference and one hearing in person. After the in-person hearing, the parties provided yet another round of briefing on the attorney's fees and costs issue. Having considered counsel's argument and voluminous submissions, the special master prepared and filed a detailed report and recommendation on the parties' applications for attorney's fees and costs (Dkt. No. 256 at 1–2). The parties were given notice of the filing and an opportunity to object. Christie's made no objection, but Minor did. Christie's was given an opportunity to respond to Minor's objections, and the special master was requested to clarify a point that Minor challenged as ambiguous. They timely did so. This order follows consideration of the special master's report and recommendation, Minor's objections thereto, and both responses to Minor's objections.

**ANALYSIS**

A district court "must decide de novo" all objections to findings of fact and conclusions of law made or recommended by a special master. FRCP 53(f)(3)–(4). Minor's objections focus mainly on the amount of the special master's award of fees and costs to Christie's. Each of Minor's stated objections will be addressed in turn.

### 1. OVERALL REASONABLENESS.

Minor's first objection to the special master's report and recommendation is an exceedingly general one: that the total award "is unreasonable and should be reduced" (Dkt. No. 260 at 2). Without specifying the amount of reduction necessary to bring the award into the realm Minor considers reasonable, Minor asks the Court to find the recommended award of $886,626.88 unreasonable in light of the totality of the circumstances of the case. On the contrary, the undersigned finds that the special master's report is based on fair and detailed consideration of the parties' submissions, and that the total recommended award of fees and costs to Christie's is reasonable in light of the action's history. None of Minor's arguments to the contrary is persuasive.

*First*, Minor emphasizes that a July 2010 order estimated "only about one-third" of Christie's case "was directed at recoverable items" (Dkt. No. 180 at 8). Minor observes that, by contrast, the spacial master proposes an "award of approximately 40% of Christie's total fees, and up to 50% of its fees for certain litigation tasks" (Dkt. No. 260 at 2). This observation is not compelling. The July 2010 order stressed that the one-third figure was "tentative" and "only [an] estimate[]" (Dkt. No. 180 at 8). The special master was not bound by this tentative estimate, and as it turns out, the special master's proposed award is in the same ballpark as the Court's tentative early estimate — the difference between approximately 33% and approximately 40% is not startling. Moreover, the special master explicitly took the one-third estimate into account and in some instances even found that a *lower* percentage was more appropriate for certain projects (Dkt. No. 256 at 28).

*Second*, Minor insists that the task of litigating this action should not have been particularly challenging or time-consuming for opposing counsel. In this vein, Minor notes that he conceded his failure to pay for certain artworks, and he allocates only small proportions of the trial testimony and exhibits to Christie's recoverable claims (Dkt. No. 260 at 3). Again, Minor's observations are unpersuasive. This action involved a two-week jury trial. Even with the simplest legal and factual issues, preparing for and conducting a two-week jury trial is no small task. This order agrees with the special master that the claims were intertwined enough that a

3

good portion of this considerable undertaking was attributable to both recoverable and non-recoverable claims. As to Minor's point that (by his count) only small proportions of the trial testimony and exhibits pertain to recoverable claims, this order agrees with the special master's finding that Minor's argument is "too literal" (Dkt. No. 256 at 27–28). Specifically, Minor's hindsight accounting fails to consider the uncertainty and circumspection that characterize trial *preparation*. This order also notes that Minor fails to provide any legal authority for such an approach to allocating recoverable work.

*Third*, Minor accuses opposing counsel of overstaffing the case. Minor "reiterates his request" that the billings of all timekeepers be disallowed except one partner, one associate, and one paralegal (Dkt. No. 260 at 4). Minor, however, does not explain why such a dramatic reduction would be warranted, and when compared to Minor's own menagerie of lawyers, Christie's legal team hardly seems preposterous. This order agrees with the special master that in light of the damages at issue in this action and the reality of litigation by large law firms, Christie's staffing decisions are not facially unreasonable. Moreover, when calculating the amount of fees recoverable for each specific task, the special master excluded bills from lawyers whose participation in the task seemed excessive.

Having considered all of Minor's arguments why the proposed award to Christie's is generally unreasonable, Minor's objection on that ground is **OVERRULED**. This order now turns to Minor's more specific objections to the special master's report and recommendation.

### 2. SPECIFIC LITIGATION TASKS.

Using the lodestar method, the special master calculated a "project total" of recoverable fees for each of 41 discrete litigation tasks performed by the litigation team working for Christie's. Minor objects to the special master's "determinations about what percentage of its total fees Christie's is entitled to recover for specific litigation tasks attributable to both recoverable and non-recoverable claims" (*id.* at 6). Each of the specific project totals Minor attacks will be addressed in turn.

4

### A. Minor Deposition and Preparation.

As to the task of preparing for and taking Minor's testimony, the special master reduced the amount of fees requested by Christie's in three respects: (1) the trial consultant's "excessive" billing rate was reduced; (2) one of the two senior associates who were present was stricken; and (3) *then* the proportion of this project directed at recoverable issues was found to be 50%, rather than the 75% claimed by Christie's (Dkt. No. 256 at 33–34). Minor argues that the 50% figure should be further reduced to 15% because, by Minor's count, "only about 31 of the 206 pages of Allen's total cross and direct examination of Minor related to the recoverable claims" (Dkt. No. 260 at 6). As previously discussed, this approach fails to account for the extent to which the recoverable and non-recoverable claims are intertwined, as well as the extent to which live testimony can depart from the plan that governed preparation efforts. Minor's objection to this project total is **OVERRULED**.

### B. Childress Deposition and Preparation.

As to the task of preparing for and taking Laura Childress's testimony, the special master reduced the amount of fees requested by Christies in two respects. As with the Minor deposition, the trial consultant's billing rate was reduced, and one of two associates was stricken. The special master then found that the allocation of 33% of this project to the recoverable claims was reasonable (Dkt. No. 256 at 34). Minor objects to this allocation on the same theory he objected to the previous allocation, claiming that "only one-third of one page of the 34-page transcript of Laura Childress's examination relates to Christie's recoverable claims" (Dkt. No. 260 at 6). For the same reasons previously stated, this objection is **OVERRULED**. This order also finds that in such a brief deposition, a substantial portion of the questioning likely was aimed at background information needed to provide foundation for any substantive testimony that addressed specific claims directly.

### C. Paulson, Gladstone, and Jacoby Depositions.

As to the tasks of preparing for and taking testimony from witnesses Laura Paulson, Beverly Gladstone, and Beverly Scheiber Jacoby, the special master once again took the same approach. After making certain deductions, the special master found that 50% of the reasonable

5

fees related to Paulson were recoverable, 33% of the reasonable fees related to Gladstone were recoverable, and 33% of the reasonable fees related to Jacoby were recoverable (Dkt. No. 256 at 33–35). Minor objects to these awards in their entirety on the grounds that these witnesses "testified *almost* exclusively regarding the Richard Prince Artworks," which were the subject of claims for which Christie's may not recover fees (Dkt. No. 260 at 7) (emphasis added). Minor does not make the claim that these witnesses provided no testimony at all regarding the recoverable claims. Moreover, this order repeats that a witness's ultimate testimony does not provide a full and accurate measure of that witness's relevance to the case during the weeks and months leading up to deposition or trial. For example, Christie's explains that Paulson was one of the individuals Minor claimed had agreed to his contingency payment plan, so it was necessary to investigate that defense to Christie's recoverable claims (Dkt. No. 263 at 15).

### D. Other General Litigation Tasks.

With respect to a litany of other litigation tasks for which the special master found that 50% of the reasonable fees incurred by Christie's were recoverable, as well as one task for which she found that 63% were recoverable, Minor "respectfully requests that the Court award no more than 33%, in accordance with the July 12 Order estimating that 'only about one-third of defendant's case was directed at recoverable items'" (Dkt. No. 260 at 7–8). Again, this order emphasizes that the figures provided in the July 2010 order were preliminary estimates and were not binding on the special master. Even so, the special master's ultimate findings and recommendation do not deviate from the estimates by alarming proportions. The specific items Minor attacks here are small components of the overall award, and as such it does not even make sense to isolate and compare them with a preliminary estimate of the overall award. Minor's objection to the percentages of reasonable fees the special master recommended Christie's recover for these other litigation tasks is **OVERRULED**.

### 3. NON-ATTORNEY TIME.

Minor objects to the special master's recommendation that Christie's be allowed to recover for time billed by its counsel's in-house litigation support staff. This objection is based on two arguments; neither is availing.

6

*First*, Minor argues that the fees of such individuals may not be recovered as costs pursuant to Section 1033.5 of the California Code of Civil Procedure, and that "items that are expressly disallowed as costs under § 1033.5 may not be awarded as an element of attorneys' fees" (Dkt. No. 260 at 8). This argument fails because Section 1033.5 does not expressly disallow the costs of the services in question. Minor points to subdivision (b)(1), which provides that "[f]ees of experts not ordered by the court" are "not allowable as costs, except when expressly authorized by law." This subdivision does not apply, because the individuals in question are not "experts." Minor's objection targets the services of Christie's *in-house* litigation support staff with titles like "trial consultant," "technology expert," "graphics specialist," and "technology project manager" (*id.* at 8–9). These individuals are not retained experts with subject-matter expertise specific to the instant action. They did not sign expert reports or provide expert testimony pursuant to FRE 702. They fall entirely outside of the meaning traditionally ascribed to the word "expert" in the context of litigation. Moreover, the case law Minor himself cites confirms that this understanding of the word "expert" should be applied to Section 1033.5. For example, the *Fateh* decision read the reference to "experts" in Section 1033.5(b)(1) as meaning "expert witnesses," and found that psychologists "hired for their expertise" were such expert witnesses. *Fateh v. Paymard*, 2d Civil No. B193873, 2008 WL 1904271, at *4–5 (Cal. Ct. App. May 1, 2008) (unpublished) (disallowing fees for retained psychologists). In short, the in-house litigation support personnel that Minor targets with this objection are not "experts" under Section 1033.5.

*Second*, Minor argues as a fallback position that the fees for these individuals' services "should be disallowed in their entirety . . . as unreasonable costs that are within the discretion of the trial court to deny" (Dkt. No. 260 at 9). Minor, however, provides no explanation as to why he views these fees as unreasonable. Accordingly, this argument also fails. Minor's objection to the special master's recommendation that Christie's may recover for time billed by its attorney's in-house litigation support staff is **OVERRULED**.

7

### 4. BLENDED BILLING RATE.

The special master applied a blended rate of $545 per hour to calculate her recommendation as to the amount of attorney's fees Christie's may recover for reasonable work done by its counsel — Skadden, Arps, Slate, Meagher & Flom. As explained in the special master's report, the result reached using this blended rate was substantially lower than the outcome would have been using either Skadden's actual billing rates (which would have produced an award more than 40% higher than the one ultimately recommended) or reduced billing rates such as those applied to Skadden fees in previous decisions (Dkt. No. 256 at 24–25).

Minor objects to this blended rate as being "excessive because nearly two-thirds of its attorney hours were billed by junior associates with less than four years experience" (Dkt. No. 260 at 10). This assertion is at odds with the special master's finding "that the time attributable to junior associates in this matter only amounts to approximately 26% of the hours requested" (Dkt. No. 256 at 24). As ordered, the special master submitted a supplemental report explaining the basis for that finding and addressing the "key differences" Minor identified between his and her tabulations of hours billed by junior associates (Dkt. No. 262). This order finds that the special master's supplemental report should be sufficient to allay Minor's concerns regarding the 26% figure and that its specifics need not be rehashed here. This order also finds that the blended rate of $545 per hour is not facially unreasonable in light of community standards and the staffing used on this case. Minor's objection to the blended rate is **OVERRULED**.

### 5. AWARD TO MINOR

Finally, in the context of his generalized objection to the special master's recommendation as unreasonable, Minor complains that "the Report does not address Minor's request to the Special Master, in a letter dated January 14, 2011, to award Minor approximately 25% of the fees he incurred for general litigation tasks, as recommended by the Court in the July 12 Order." Minor now "respectfully requests that the Court reject the Special Master's recommendation to award Minor only approximately 4% of his total fees . . . and instead award Minor 25% of his fees for general litigation tasks, as calculated in Minor's January 14 letter to the Special Master" (Dkt. No. 260 at 5). Minor's January 14 letter is listed in Schedule A as one of the many

8

documents the special master considered in preparing her report and recommendation (Dkt. No. 256 at 5, A-3). That this particular letter was not specifically addressed in the report does not imply that it was not given due consideration. Moreover, the 25% figure in the July 2010 order was, like the one-third figure already discussed, only a tentative estimate that did not bind the special master. This order also notes that the January 14 letter was submitted six months after the deadline for fee and cost requests, and that Minor's instant objections provide no substantive rationale for adopting his proposed 25% figure. Accordingly, Minor's request that the undersigned do so at this late date without specific justification is **DENIED**.

\*          \*          \*

Having overruled all of Minor's objections to the special master's report and recommendation regarding attorney's fees and costs, this order **ACCEPTS** and **ADOPTS** the report and recommendation in full.

### 6. SPECIAL MASTER'S FEES AND COSTS

The special master filed her fee request on February 7, 2011. Objections to the fee request were due on February 22, 2011. No objections to the special master's fee request were timely filed. Having reviewed the special master's fee request, this order finds it to be reasonable. Pursuant to FRCP 53(g), the special master's compensation is **FIXED** as set forth therein.

### CONCLUSION

All of Halsey Minor's objections to the special master's report and recommendation regarding attorney's fees and costs are **OVERRULED**. The report and recommendation is hereby **ADOPTED IN FULL**. Accordingly, the recoverable costs and fees in this matter are allocated as follows: (1) $117,111.09 in attorney's fees and disbursements and $16,859.63 in taxable costs to Minor; and (2) $886,626.88 in attorney's fees and disbursements and $16,640.74 in taxable costs to Christie's. Payment of these sums must be made by **MARCH 31, 2011**.

Pursuant to FRCP 53(g), the special master's compensation is **FIXED** as follows. Halsey Minor shall pay the special master $18,364.54 in fees and expenses, and Christie's shall pay the special master $17,177.11 in fees and expense. These payments shall be made by

9

**MARCH 28, 2011**.  This now concludes all proceedings in the district court save only proceedings to enforce collection.

    **IT IS SO ORDERED.**

Dated:  March 14, 2011. 
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE